UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTUR ZAWADA,                                    Case No. 19-12103

      Plaintiff,                                Stephanie Dawkins Davis
v.                                               United States District Judge

PATRICK HOGAN et al.,

      Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#23]**

**I. INTRODUCTION**

      This action arises from an encounter between Plaintiff, Artur Zawada, and officers from the Township of Hamburg police department which culminated in Zawada's arrest on December 19, 2017.  Before the court is Defendants' Motion for Summary Judgment. (ECF No. 23).  Zawada filed a complaint against Defendants, the Township of Hamburg, Officer Patrick Hogan, and Sergeants Gary Harpe and Megan Paul alleging violations of 42 U.S.C. §1983 and state law claims stemming from Zawada's December 19, 2017 arrest.  Defendants moved for summary judgment, asserting that Zawada's claims are not viable.  For the reasons stated below, this court **GRANTS** Defendants' Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

At the time of the subject incident, Artur Zawada worked at Outback Auto in Hamburg, Michigan, as an auto body paint technician under the supervision of Frederic Cummins.  (ECF No. 23-3, PageID.219).  On December 11, 2017, Cummins gave Zawada $1,500 in cash with instructions to purchase automobile parts for Outback from A&D Auto Parts located in Toledo, Ohio—about a one hour drive.  (ECF No. 23-3, PageID.221; Def's Ex. C).  The parts were not ready when Zawada went to get them from the shop, so he did not pay for the parts on that day.  (ECF No.23-2, PageID.174).  Nor did Zawada return the $1,500 to Cummins after he left the shop.  (*Id.* at PageID.175).  Instead, he returned to his home in Ann Arbor, and later that evening, returned the company truck, keys and gas receipt to the shop.  (ECF No. 23, PageID130 and ECF No. 25, PageID.504).

The parts were ready sometime later and Zawada and Cummins exchanged text messages about Zawada returning the money to Cummins so he could purchase the parts.  (ECF No. 23-6).  In one text, Zawada suggested that he was unable to return the money at that time because he was dealing with a family emergency.  (*Id.* at PageID.270).  Zawada also testified that he did not return the money because he was preoccupied with a pending job interview.  (ECF No. 23-2, PageID.175).  In part of the text message exchanges, Zawada insisted that Cummins pay him $755 out of the $1,500 for work that he had performed for

Cummins.  (ECF No. 23-6, PageID.279).  Cummins told Zawada to return the

$1,500 in full, and then they could talk about the money that Cummins owed him.

(*Id.* at PageID.274).  However, Zawada did not agree to return the money to

Cummins during the text exchange.  (*See* ECF No. 23-6).

On December 14, 2017, Cummins went to the Hamburg Township Police

and reported that Zawada stole $1,500.00 from him.  (ECF No. 23-3).  The police

interviewed Cummins at the police station about his allegations.  (Def.'s Ex. C).

Cummins told police that he sent Zawada out to a junkyard in Toledo to pick up

automobile parts in one of his business trucks and he gave Zawada $1,500 in cash

for the parts.  *Id.*  Cummins stated that the junkyard called him and told him that

Zawada had arrived and stayed for a little while, but Zawada had left and they

could not find him.  *Id.*  Cummins tried to contact Zawada, but Zawada did not

respond.  *Id.*  Cummins also told the police that Zawada came back to his business

and returned the truck that he had driven sometime later that night or early the next

morning, but Zawada did not return the money.  *Id.*  He said that he tried to contact

Zawada about 100 times about the money, but Zawada only recently had texted

him back, and Zawada refused to return the $1,500.  He told the police that he

wanted to press charges against Zawada.  *Id.*  Officer Hogan created and filed an

incident report after Cummins' visit to the police station.  (ECF No. 23-3).  And

Defendant Sergeant Paul signed off on Hogan's report.  (*See id.*, *see also* ECF No. 23-7, PageID.290).

On December 19, 2017, Defendants Hogan and Harpe travelled to Zawada's residence in Ann Arbor, Michigan to investigate Cummins' allegations.  (ECF No. 23-3, PageID.224).  When they arrived at Zawada's home, they knocked on the door.  (ECF No. 23-2, PageID.188).  Sergeant Harpe was dressed in plainclothes but introduced himself as a law enforcement officer to Zawada.  *Id.*  Officer Hogan was dressed in a police uniform.  *Id.*  Zawada let Harpe and Hogan into his home and he did not ask them to leave at any point.  (*Id.* at PageID.97).  The officers noticed that the inside of Zawada's home was "pretty bare," without much furniture or personal artifacts inside.  (ECF No. 23-7, PageID.293).  The sparsity of the interior led the Defendants to believe that he may be a flight risk.  (ECF No. 23, PageID.145).  Harpe and Hogan proceeded to question Zawada about the $1,500 from Cummins.  Zawada told the officers that he spent the money on his bills.  (ECF No. 23-2, PageID.191).  Zawada also told the officers that the money was not at his home, even though the money was in fact at his home with him.  (*Id.* at PageID.190).

In recounting his version of events to Hogan and Harpe, Zawada stated that he told Cummins that Cummins owed him $795 for work that he had already performed for him and that he would therefore return $705 to Cummins.  (ECF

No.23-3, PageID.224).  The officers asked Zawada where the money was, and Zawada stated that he had the money but it was not at his home.  (*Id.* at PageID.225).  Zawada later told the officers that he used some of the money to pay some bills.  *Id.*  They asked Zawada to give them the $705 that Zawada said he owed Cummins; however, Zawada refused.  *Id.*  Defendants then allowed Zawada to call a friend to bring him the money and provide it to them; however Zawada's attempt to call his friend were unsuccessful.  *Id.*

After the conversation with the officers, the officers arrested him.  (ECF No.23-2, PageID.194).  By Zawada's account, he was sitting on the stairs in his home when Hogan pulled him from the sitting position by his forearm so that he was standing up; someone tripped him; and then both officers tackled him to the ground.  *Id.*  He stated that Defendants did not ask him to put his hands behind his back before they tackled him.  *Id.*  Zawada then fell onto the carpet on his left shoulder and head.  (*Id.* at PageID.195).  The officers told him to stop resisting, but according to Zawada, he was not resisting.  Rather, he was trying to reach for his phone, which was also ringing at the time.  *Id.*  Zawada stated that he had no chance to cooperate with the officers because the interaction happened so fast; the officers handcuffed him, and his wrists hurt immediately.  (*Id.* at PageID.196).  Zawada did not say anything to the officers about the handcuffs hurting while he was in his home.  *Id.*  Once he was handcuffed,  Defendants then lifted him up and

dragged him out of his house and put him in a police car.  *Id.*  After the arrest, Zawada felt pain in both of his shoulders and numbness in his hands.  (*Id.* at PageID.197).

The officer's version of events differs from Zawada's in several respects. According to Hogan's police report, Zawada was sitting on the steps of his home when Hogan asked Zawada to stand up and turn around, but Zawada refused. (ECF No. 23-3, PageID.226).  Further, when Hogan reached for Zawada's arm, Zawada pulled away.  *Id.*  Hogan then was able to grab Zawada's arm and Hogan and Harpe moved Zawada to the living room with Zawada refusing to comply with verbal commands and continuing to resist arrest the entire time.  *Id.*  According to Defendants, Zawada then fell to the ground and Hogan and Harpe held him down continuing to tell Zawada to put his hands behind his back, but Zawada continued to resist.  *Id.*  Hogan testified that he attempted to grab Zawada's arm to pull it behind his back, but Zawada pulled away, shifting his momentum into the living room, and Zawada's momentum caused him to fall to the ground.  (ECF No. 23-7, PageID.295).  According to Hogan, there was not much impact when they hit the ground because Zawada was already falling to the ground.  *Id.*  Hogan also stated that it happened slow and without much force.  Eventually, Hogan successfully handcuffed Zawada while Zawada was on the floor.  (ECF No. 23-3, PageID.226;

*see also* ECF No. 23-7, PageID.295).  He estimated that the entire handcuffing effort took about 30 seconds to one minute.  (ECF No. 23-7, PageID.296).

Harpe testified that after speaking to Zawada, he determined that it would be best to arrest him.  (ECF No. 23-8, PageID.314).  Either he or Hogan informed Zawada that they were arresting him.  *Id.*  Then Harpe attempted to put Zawada's left arm behind his back but Zawada resisted; Harpe then forced Zawada's left arm behind his back. (*Id.* at PageID.315).  Harpe stated that Hogan was struggling to get Zawada's right arm behind his back, and that the three of them were stumbling through the apartment during the struggle.  *Id.*  Harpe then said to take Zawada to the ground, and either Zawada tripped or Hogan and he pushed Zawada down to the ground.  *Id.*  Harpe testified that he did not fall on Zawada, but his shoulder was on top of Zawada's shoulder after Zawada was on the ground.  *Id.*  The officers were able to handcuff Zawada shortly after he was on the ground.  *Id.*  Harpe estimates that the struggle with Zawada lasted 20 seconds.  *Id.*  After the altercation, Harpe suffered from rib pain and went to a chiropractor for a readjustment.  (*Id.* at PageID.319–20).

## III.   Additional Procedural History

The Livingston County prosecutor charged Zawada with felony embezzlement, or in the alternative, conversion over $100. (ECF No. 23-11,

PageID.329).  On January 30, 2018, a district judge in Livingston County found that there was probable cause that Zawada committed either embezzlement or larceny by conversion.  (*See* ECF No. 23-5, PageID.260–62).  Livingston County also charged Zawada with neglecting/refusal to aid a sheriff.  (ECF No. 23-11, PageID.329).  Livingston County dropped the embezzlement and larceny charges on July 13, 2018, and on that same day, Zawada pleaded no contest to neglecting/refusal to aid a sheriff in the 44th Judicial Circuit Court of Livingston County.  (*Id.*; ECF No. 23-15).  On January 24, 2018, Washtenaw County charged Plaintiff with two counts of attempted assault/resistance/obstruction of a police officer.  (ECF No. 23-12, PageID.332).  On January 30, 2018, Officer Hogan arrested Zawada on the Washtenaw County charges and transported him to the Washtenaw County jail.  (ECF No.1, PageID.4).

On April 26, 2018, the 15th District Court in Washtenaw County conducted an evidentiary hearing on a motion to dismiss relating to the two assaulting/resisting/obstructing charges filed against him.  (ECF No. 23-14).  Zawada asserted that the police were not acting legally as police officers at the time of his arrest on December 19, 2017.  (*Id.* at PageID.347).  The court denied Zawada's motion to dismiss, concluding that Zawada's December 19, 2017 arrest was lawful.  (*Id.* at PageID.351–52).  The court noted that Michigan case law allows police officers acting outside of their jurisdiction to arrest individuals as

private citizens, as long as the officers have reasonable cause to believe that the individual committed a felony.  *Id.*  Although the court denied the motion to dismiss in April of 2018, on May 7, 2018, Washtenaw County voluntarily dismissed the two charges against Zawada for unknown reasons.  (ECF No. 23-13).

Zawada subsequently brought the instant complaint  alleging violations of 42 U.S.C. §1983 against the individual defendants and asserting a *Monell*[1] claim against the Township of Hamburg, as well as several state law claims.  (ECF No. 1).  The court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice on August 7, 2019.  (ECF No. 3).  The case was reassigned to the undersigned on January 31, 2020 and  Defendants subsequently filed their Motion for Summary Judgment.  (ECF No. 23).  Within their Motion, Defendants also moved this court to dismiss Zawada's § 1983 claims, asserting that Zawada vaguely pleaded his claims.  (*Id.* at PageID.139–40).  Plaintiff filed a response opposing the Motion, and Defendant replied.  (ECF Nos. 25, 27).  The court held a hearing on the Motion during which Zawada waived his due process and municipal liability claims.  Accordingly, the court **GRANTS** summary judgment on those claims.  And for the reasons that follow, the court **GRANTS** summary judgment to Defendants on Zawada's remaining claims.

---

[1] *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).

## IV. LEGAL STANDARD

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is,

the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario*, *Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it

carries the burden of proof, the movant is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."  *Id*. at 327.

## V. DISCUSSION

### A. Claims Against Sergeant Paul

Defendants argue that Sergeant Paul had no involvement in Zawada's arrest or his subsequent criminal proceedings.  (ECF No. 23, PageID.138–39).  Accordingly, they argue that this court should dismiss the claims against her.  (*Id.*).  Zawada states that Sergeant Paul played a major role giving rise to this lawsuit because she was the supervisor reviewing and approving Zawada's alleged unlawful arrest report.  (ECF No. 25, PageID.507).  Zawada states that Sergeant Paul knew that Officer Hogan and Sergeant Harpe were acting outside of their jurisdiction when they arrested Zawada, and she knew that his arrest was unlawful.  (ECF No. 25, PageID.507–09).  Zawada also states that Paul had a duty as the supervisor to mitigate Zawada's damages by looking at the report and ordering Zawada's release.  (*Id.*).

Liability under § 1983 "must be based on more than respondeat superior, or the right to control employees. . . . a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).  Allegations that a supervisor failed to act do not establish supervisory liability.  *Essex v. Cty of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).  So, personal liability against a supervisor under § 1983 must be based on active unconstitutional behavior."  *Shehee*, 199 F.3d at 300.

Zawada does not allege that Paul actively engaged in unconstitutional conduct herself.  Rather, Zawada is alleging that she failed to act by ordering Zawada's release from jail when she reviewed Hogan's police report.   The record shows that Sergeant Paul reviewed and approved the incident report that Hogan drafted in relation to Zawada's arrest.  (ECF No. 23-3; ECF No. 23-7, PageID.290).  She signed off on the report *after* Hogan and Harpe had arrested Zawada.  *See id.*  Accordingly, Paul did not directly participate in any of the alleged actions that Zawada is claiming violated his constitutional rights.  The

-13-

record also does not include any evidence that Paul encouraged, authorized, approved, or acquiesced in the conduct, since Paul merely approved the incident report after the arrest had occurred and before forwarding it to the Prosecutor's Office for further action.  (ECF No. 23-16, PageID.393, 394, 396–97).  For these reasons, the court **GRANTS** summary judgment in favor of Sergeant Paul and dismisses her from this action.

### B. Federal Claims Against Officer Hogan and Sergeant Harpe

The remaining unwaived § 1983 claims that Zawada asserts include claims against Officer Hogan and Sergeant Harpe for wrongful seizure and excessive force in violation of the Fourth Amendment.  (ECF No. 25, PageID.511–14).  Defendants argue that this court should grant summary judgment in their favor because there are no genuine disputes of material facts as to these claims.  (*See id.* at PageID.140–155).  Defendants also contend that they are entitled to qualified immunity.  (*Id.* at PageID.155).

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his or her position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court has established a two-part test to determine whether qualified immunity applies to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id*. If both questions were resolved in the affirmative, then the doctrine of qualified immunity would not apply, and the case could proceed. The Court later discarded the mandatory sequencing of the two-part test, finding that it was no longer sound based on several factors, including judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the

issues before us.'"  *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting

*Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

Under the "clearly established" prong of the qualified immunity test, the

contours of the right must be sufficiently clear such that a reasonable official

would understand that what he is doing violates that right.  *Anderson v. Creighton*,

483 U.S. 635, 640 (1987).  "A clearly established constitutional violation requires

on-point, controlling authority or a robust consensus of cases of persuasive

authority."  *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435,

439 (6th Cir. 2013).  "[C]laims that law enforcement officers have used excessive

force—deadly or not—in the course of an arrest, investigatory stop, or other

'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

'reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  In

determining whether a constitutional violation based on excessive force has

occurred, the Sixth Circuit applies "the objective-reasonableness standard, which

depends on the facts and circumstances of each case viewed from the perspective

of a reasonable officer on the scene and not with 20/20 hindsight."  *Fox v. DeSoto*,

489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 395–96).  "The

calculus of reasonableness must embody allowance for the fact that police officers

are often forced to make split-second judgments-in circumstances that are tense,

uncertain, and rapidly evolving-about the amount of force that is necessary in a

particular situation." *Graham*, 490 U.S. at 396–97. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fox*, 489 F.3d at 236 (quoting *Graham*, 490 U.S. at 396).

1. <u>Arrest Outside of Jurisdiction</u>

As an initial matter, Defendants assert that they validly arrested Zawada even though they were outside of their jurisdiction when they arrested him pursuant to Michigan's citizen's arrest statute. (ECF No. 23, PageID.143–46). Zawada states in his response that the defendant officers arrested him outside of their lawful jurisdiction. (ECF No. 25, PageID.509). He also faults Sgt. Paul for signing off on the arrest knowing that it occurred outside of Hamburg Township. Yet, Zawada makes no attempt to explain how making such an arrest violates the Fourth Amendment, and he offers no authority suggesting that it does. This portion of his argument seems to solely rest on the fact that the arrest happened beyond Hamburg P.D.'s jurisdictional authority within the state and he responds that his complaint allegations are sufficient to survive a motion to dismiss. (ECF No. 25, PageID.507–11). But it is unclear from his response which claim(s) he believes these facts support and all of his state law claims were previously dismissed. (ECF No. 3). For their part, Defendants include a detailed analysis of state law in their Motion to

-17-

support their argument that the arrest was valid.  However, the issue of whether

Defendants could arrest Zawada in Ann Arbor implicates state law, and thus any

violation would be a state law claim for acting outside of their jurisdiction.  *See*

Mich. Comp. Laws Ann. § 764 (laws dealing with arrest).  A state law violation for

arresting an individual outside of an officer's jurisdiction is not sufficient to create

a constitutional claim that said officer violated the Fourth Amendment.  *Otworth v.*

*Vanderploeg*, 61 F. App'x 163, 166 (6th Cir. 2003) ("a violation of state law cannot

support a cause of action under § 1983.").   Moreover, under notably similar

circumstances, the court has held that arrests made outside of the geographic

boundaries of the arresting authority are not rendered invalid.  In *Greenan v. Romeo*

*Village Police Dep't*, 819 F. Supp. 658, 663 (E.D. Mich. 1993), the court found that

Romeo Village officers who had conducted an arrest outside of their jurisdiction had

acted lawfully.  The court observed:

> The primary issue of whether the arrest was legal is a matter of
> Michigan state law. In *People v. Bashans*, 80 Mich. App. 702, 712–
> 13(1978), the Michigan Court of Appeals held that any citizen,
> including a police officer acting outside of his jurisdiction, may make
> an arrest for a felony even though the person to be arrested has not
> committed the felony in the presence of the citizen seeking to make the
> arrest.

While the court in *Greenan* also relied on the fact that the officers were

working in conjunction with two other law enforcement departments that did have

jurisdiction, other cases have made it clear that officers retain the right to conduct

arrests even without that distinction under certain circumstances and even if the

state statute is violated, such a "statutory violation does not render police action

unconstitutional." *See Mullins v. Moore*, 2018 WL 4610694, at *3 (W.D. Mich.

Sept. 26, 2018) (Internal citation omitted).   Simply put, Zawada did not present

proof nor does the record contain evidence that Defendants deprived him of a

constitutional right by arresting him outside of their established jurisdictional

boundaries of authority.   Accordingly, Zawada cannot demonstrate that the arrest

outside of the Township's boundaries raises a genuine issue of material fact.

2. <u>Fourth Amendment Unlawful Seizure</u>

Defendants argue in their Motion that they had probable cause to arrest Zawada.

Therefore, they did not violate the Fourth Amendment when they arrested him.

(ECF No. 23, PageID.140–41).   Zawada, on the other hand, argues that Defendants

did not have probable cause to arrest him on December 19, 2017.  (ECF No. 25,

PageID.511–14).   He focuses on Harpe's actions and asserts that Harpe did not

read the initial police report before going to question him; that the text messages

between Zawada and Cummins indicated that Cummins owed the money at issue

to Zawada for hours worked; and that Harpe only arrested him at Officer Hogan's

urging.  (*Id.* at PageID.512–513).

Case law defining probable cause in the context of police officer arrests is

instructive.  The Fourth Amendment is applicable when an individual's freedom to

leave has been restricted. *Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003). Zawada must show that there was a seizure and that it was unreasonable under the Fourth Amendment in order to prevail on his Fourth Amendment unreasonable seizure claim. *Id.* "[A]n arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). "Probable cause requires only the probability of criminal activity, not some type of 'prima facie' showing." *Jolley v. Harvell*, 254 F. App'x 483, 486 (6th Cir. 2007). Probable cause therefore exists if, when "viewing the facts in the light most favorable to [Zawada], the [court finds that the] arresting officers were justified in their belief that [Zawada] had probably committed . . . a crime." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).

In this case, Defendants had probable cause to believe that Zawada had committed a crime after they spoke to his boss, Cummins, and to Zawada. Cummins went to the Hamburg police department and spoke with Officer Hogan. He informed Hogan that he gave Zawada $1,500 in order to purchase automobile parts, but that Zawada did not purchase the parts and did not return the money. Cummins told Hogan that he tried to contact Zawada many times, which Zawada mostly ignored. When Zawada did text Cummins back, he both acknowledged that he had the money and refused to return it to Cummins. Cummins' version of

events was largely corroborated by the text messages between himself and

Zawada, which he shared with the officers when he made his report.  Cummins

informed Hogan that he wanted to press charges against Zawada.  Based on

Cummins' report, Hogan and Harpe visited Zawada to discuss Cummins'

allegations.  During the course of their discussion with Zawada, Zawada confirmed

that Cummins had given him $1,500 to purchase car parts; he told the officers that

he did not purchase the parts and had not returned the money to Cummins.  He also

told the officers that he had spent some of the money on his bills.  Further, Zawada

testified that he told the officers he did not have the unspent portion of the money

with him.  Hence, he did not give the officers the rest of the money when they

asked him for it.

Thus, according to Zawada's own admission, he told Officer Hogan and

Sergeant Harpe that he had taken $1,500 from Cummins and not used the money

for the business purpose that it was intended for; instead, he spent part of the

money for his personal use and refused to return any of the money to Cummins or

the police.  Indeed, in the audio tape of the encounter with Zawada submitted by

Defendants, Hogan and Harpe can be heard telling him that he cannot just take

Cummins' money.  (Def.'s Ex. H, 14:04:20).  The officers can also be heard telling

Zawada that he took more money than what he was owed, and then asking him for

the rest of the money.  *Id.*  Under Michigan law, an employee who "fraudulently

converts to his or her own use . . . any money . . . that is under his or her charge or control by virtue of . . . being an . . . employee . . . is guilty of embezzlement. . . . the person is guilty of a felony [if] [t]he money . . . has a value of $1,000.00 or more but less than $20,000.00." Mich. Comp. Law § 750.174(1), (4)(a). As such, there is no genuine issue of material fact as to whether the Defendants had probable cause to believe that Zawada had committed the felony of embezzlement, and their probable cause justified Zawada's arrest.

Zawada also seems to assert, by extension, that his arrest for the two Washtenaw County assaulting/resisting/obstructing charges was invalid because the December 19, 2017 arrest was invalid. (ECF No. 25, PageID.506, 509). Washtenaw County charged Zawada with two felony counts of assaulting/resisting/obstructing a person performing his or her duties. (ECF No. 23-12). The law states, "an individual who assaults, batters,  wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony . . . ." Mich. Comp. Laws Ann. § 750.81d. As an initial matter, the court has concluded that Defendants validly went to question Zawada about Cummins' allegations and that Defendants' December 19, 2017 arrest of Zawada was valid. Therefore, Plaintiff's premise of an initial invalid arrest does not hold. Moreover, Plaintiff cites no authority for this argument and develops it no further, instead pivoting to an

argument about Sgt. Paul's culpability.   "[I]ssues adverted to in perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed

waived.  It is not sufficient for a party to mention a possible argument in the most

skeletal way, leaving the court to . . . . put flesh on its bones." *McPherson v.*

*Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

Further, aside from this court's independent determination that probable cause

supported Zawada's arrests, Zawada is precluded from challenging the validity of

his December 19, 2017 and January 30, 2018 arrests based on proceedings in state

court.  The Sixth Circuit has held that pleas made by a plaintiff in state court

criminal proceedings and the finding of guilt estops a plaintiff from later

challenging whether the officers had probable cause. *Walker v. Schaeffer*, 854

F.2d 138, 142 (6th Cir. 1988).  In this case, on July 13, 2018, Zawada pleaded no

contest to neglecting/refusal to aid a sheriff in the 44th Judicial Circuit Court of

Livingston County in relation to his December 19, 2017 arrest in violation of

M.C.L. §750.483.  The statute states:

> Any person who being required by any sheriff, deputy sheriff, coroner or
> constable, shall neglect or refuse to assist him in the execution of his office,
> in any criminal case or in the preservation of the peace, or the apprehending
> or securing of any person for a breach of the peace, or in any case of escape
> or rescue of persons arrested upon civil process, shall be guilty of a
> misdemeanor.

Mich. Comp. Laws Ann. §750.483.  As a part of his plea, Zawada admitted on the

record that he was guilty of the crime that he was pleading to because he failed to

return Cummins' money to the police when he had it in his possession. (ECF No. 23-15, PageID.382–84). The state court's finding that Zawada was guilty of violating M.C.L. §750.483 during the execution of his December 17, 2019 arrest thus also necessarily included a finding that Zawada converted Cummins' money and refused to cooperate with the police. Therefore, Zawada is precluded in later civil proceedings from challenging probable cause.

The Supreme Court and the Sixth Circuit have also concluded that issues decided in state court criminal proceedings may preclude the relitigation of the same issues in a §1983 action in federal court. *Allen v. McCurry*, 449 U.S. 90, 102 (1980); *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997). The *Donovan* court considered Kentucky law on issue preclusion and concluded that a plaintiff could not argue that the officers arrested him without probable cause because the state trial court had determined earlier at a suppression hearing that his arrest was valid. *Id.* The court stated that the court's finding that the arrest was valid was essential to its denial of the plaintiff's motion to suppress, and stated that the plaintiff had already received a full and fair opportunity to litigate the validity of his arrest during his suppression hearing. *Id.* Therefore, he could not challenge the validity of his arrest again. *Id.*

Three elements must be satisfied for issue preclusion to apply under Michigan law: "(1) a question of fact essential to the judgment must have been

actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel."  *Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 426 (6th Cir. 2018) (internal quotations omitted).  Mutuality of estoppel is not required where a party asserts issue preclusion defensively, as Defendants do here, *id.*, as long as the plaintiff "had a full and fair opportunity to litigate the contested issue previously." *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1099 (6th Cir. 2012).

Here, the Livingston County district court held a preliminary examination hearing and found that there was probable cause for the embezzlement charge against Zawada, allowing the charge to proceed.  (*See* ECF No. 23-5, PageID.260–62).   The 15th District Court in Washtenaw County also concluded that the Defendant officers had probable cause to arrest Zawada on December 19, 2017, and that the Washtenaw County charges against Zawada were valid. (ECF No. 23-14). In the Washtenaw County court, Zawada challenged the two assaulting/resisting/obstructing charges, expressly arguing that they were not valid because the officers made the December 19, 2017 arrest outside of their jurisdiction. (*Id.* at PageID.347).  However, the state court concluded that the December 19, 2017 arrest was valid, noting that police officers can arrest individuals outside of their

jurisdiction as long as reasonable cause exists that the individual committed a felony. (*Id.* at PageID.351–52).   The court correspondingly declined to dismiss the two Washtenaw County charges against Zawada.   *Id.*   Zawada thus had a full and fair opportunity to litigate the validity of his December 19, 2017 and January 30, 2018 arrests, and the Livingston County and Washtenaw County courts found both of his arrests to be valid.   Issue preclusion therefore precludes him from relitigating the validity of his arrests.

Zawada brought this action alleging that Defendants violated his Fourth Amendment right to be free from unreasonable seizure.   Zawada indirectly asserted that his January 30, 2018 arrest in Washtenaw County was invalid because of the alleged invalidity of his December arrest.   However, probable cause supported Zawada's December arrest because Cummins informed Defendants that Zawada had committed a felony, and Cummins' allegations were confirmed by Zawada himself when Defendants went to question him.   In addition, state court proceedings in Livingston County and Washtenaw County have also concluded that Zawada's December 19, 2017 and January 30, 2018 arrests were valid.   And a purported violation of a state statute does not implicate Plaintiff's constitutional rights under these circumstances.   For these reasons, the court concludes that Defendants did not violate Zawada's Fourth Amendment rights.   Therefore, the court does not need to

consider whether Zawada's right was clearly established at the time of the alleged violation.

### 3. Excessive Force

Defendants argue in their Motion that Hogan and Harpe used reasonable force during Zawada's arrest and Zawada cannot maintain his excessive force claim.[2] (ECF No. 23, PageID.146).  Defendants submitted audio from Officer Hogan's patrol car of their encounter with Zawada inside of his home.  Part of the recording of the encounter is not audible.  Defendants also submitted video and audio of the majority of Defendants' ride with Zawada to the Livingston County jail.  (Def's Ex. H).  Zawada responds by saying that Harpe and Hogan had no probable cause and did not have lawful authority to arrest him; therefore, *any* force used to arrest him would be excessive.  (ECF No. 25, PageID.514).  Zawada also states that Harpe and Hogan violently took him to the ground.  (*Id.*).

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should

---

[2] Defendants state in their Motion that Zawada's pleadings appear to allege an excessive force handcuffing claim and Defendants discuss additional facts around his handcuffing.  Defendants then proceed to argue that they are entitled to summary judgment on the excessive handcuffing claim.  (ECF No. 23, PageID.150–54).  However, Zawada does not assert that he brings a handcuffing claim in his response, and he did not respond to Defendants' argument concerning an excessive force handcuffing claim.  (ECF No. 25).  Hence, the court deems any such excessive force handcuffing claim waived and does not address it further.  *See McPherson*, 125 F.3d at 995–96 ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ."

*Schreiber*, 596 F.3 d at 331–32 (quoting *Graham v. Connor*, 490 U.S. 386, 395

(1989)).  To determine if an officer's use of force was reasonable, this court must

balance "the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake."

*Id.* (quoting *Graham*, 490 U.S. at 396).

Courts must apply an "objective reasonableness standard, which depends on

the facts and circumstances of each case viewed from the perspective of a

reasonable officer on the scene and not with 20/20 hindsight."  *Jefferson v. Lewis*,

594 F.3d 454, 461 (6th Cir. 2010).  The right to make an arrest allows for a "degree

of physical coercion" to effect the arrest.  *Graham v. Connor*, 490 U.S. 386, 396

(1989).  But the proper application of force depends on the circumstances of a

particular case, "including the severity of the crime at issue, whether the suspect

poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight."  *Id.*  "Not every

push or shove, even if it may later seem unnecessary in the peace of a judge's

chambers . . . violates the Fourth Amendment."  *Id.*

Pursuant to *Graham*, to determine if Defendants used excessive force, this

court should assess the severity of the crime at issue, whether the plaintiff posed an

immediate threat to the officers' safety, and whether the plaintiff was actively

-28-

resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. In responding to the motion, Plaintiff describes the force defendants used during his arrest in the facts section of his response, but he offers no analysis of any of the *Graham* considerations to support his excessive force claim – instead opting to argue that "any" force was excessive given the illegality of the arrest. Though Plaintiff's reasoning may have some logical appeal, he cites no authority supporting it.[3] And regardless, the court has already determined that the arrest neither lacked probable cause nor was rendered illegal by having been made outside of Defendants' jurisdiction. Having made no further argument, Zawada has offered, at best, a skeletal framework for relief. As the Sixth Circuit has observed, "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Thus, Zawada has waived further argument and failed to demonstrate the existence of a genuine issue of material fact on the issue of excessive force.

---

[3] The only case that Zawada cites in the excessive force section of his response is *Holmes v. City of Massilon*, 947 F.2d 945 (6th Cir. 1991). Yet, the purpose of the citation, based on the context provided in Plaintiff's brief, appears to be to show the availability of relief based on emotional harm, not to address the reasonableness of the force used. Notably, after reviewing *Holmes,* which merely consists of a *sua sponte* order dismissing the plaintiff's appeal, it is unclear how it supports any argument Plaintiff has advanced.

-29-

As noted earlier, if the court determines that there has been no constitutional violation, then the court need not advance to the second inquiry under *Saucier* which asks whether the right was clearly established.  Here, Zawada has failed to demonstrate that there is a genuine issue of fact as to either of his remaining Fourth Amendment claims.  Thus, it would appear that Defendants are entitled to qualified immunity.  Nevertheless, Zawada's sole argument in response to Defendants' claim of qualified immunity is that they were not acting in their official capacities, therefore qualified immunity does not apply.  Zawada says that Defendants were acting as "private citizens."  (ECF No. 25, PageID.516).  Yet, it is unclear how this claim helps Zawada.  Indeed, if Defendants were acting as private citizens – and thus not as state actors – then they could not be subject to §1983 liability at all. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) ("A plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct.") (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  There are exceptions to this general rule when private actors work with state actors or when private actors act under color of state law.  *See Tahfs*, 316 F.3d at 590–91.  However, Zawada does not assert that any exception applies.  (*See* ECF No. 25, PageID.515–16).  Moreover, Defendants point to authority supporting the continued availability of qualified immunity for police officers whose arrests outside of their geographic jurisdictional boundaries are challenged on

constitutional grounds.  *See Greenan v. Romeo Vill. Police Dep't*, 819 F. Supp.

658, 663 (E.D. Mich. 1993).   Thus, Zawada's argument either  undermines his

own case rather than helps it or it is woefully underdeveloped and therefore,

waived under *McPherson*, *supra*.  As previously noted, it is the plaintiff's burden

to establish that qualified immunity does not apply.  *Sheets v. Mullins*, 287 F.3d

581, 586 (6th Cir. 2002).  Plaintiff's argument does not come close to meeting that

burden.  As a result, his claim of excessive force must fail and the court **GRANTS**

summary judgment for Defendants on Zawada's excessive force claim.

C. <u>Sufficiency of Zawada's § 1983 Claims</u>

Defendants also argue that Zawada did not sufficiently plead his § 1983 claims

and that they are vague and therefore subject to dismissal.  (ECF No. 23,

PageID.139–40).  (*Id.* at 140).  Zawada responded that he specifically pleaded in

his complaint that the officers unlawfully arrested him outside of their lawful

jurisdiction and he alleged physical and emotional injuries.  (ECF No. 25,

PageID.509–10).

Given that Defendants' motion for summary judgment pertained to all of

Zawada's claims, and the court has granted summary judgment on all of the

claims, the court need not address Defendants' arguments that the § 1983 claims

also warrant dismissal for lack of sufficient information.

## VI. CONCLUSION

Zawada brought this action asserting that Defendants unlawfully arrested him, violated his due process rights, and used excessive force.  Zawada waived his due process and *Monell* claims at the hearing in this matter.  Zawada's claim that officers wrongfully arrested him because the arrest occurred outside of Defendants' jurisdiction does not implicate constitutional violations.  The court dismissed the claims against Sergeant Paul, as she had no direct involvement in the alleged constitutional violations.  The record does not support Zawada's claims that Defendants arrested him without probable cause.  Additionally, Zawada has not shown that there is a genuine issue of material fact regarding his excessive force claim.  Thus, for these reasons and the reasons discussed herein, the court **GRANTS** Defendants' Motion for Summary Judgment.

**SO ORDERED.**

Dated:　　　August 20, 2021

s/Stephanie Dawkins Davis
HON. STEPHANIE DAWKINS DAVIS
United States District Court Judge
